## Equitable Discount Corp. v. Fischer

*Jacques H. Geisenberger*, for plaintiff.

*Wilson Bucher*, for defendant.

JOHNSTONE, J., August 16, 1957.—Plaintiff seeks to recover in this action in assumpsit the sum of $600, together with interest, on three trade acceptances, each

in the sum of $200, executed and delivered by defendant to Sterling Materials Company, Inc., and transferred by indorsement to plaintiff. At the close of the trial of this case, the court entered a directed verdict in favor of plaintiff and against defendant on motion of counsel for plaintiff. Defendant has filed a motion for a new trial and assigned two reasons in support thereof. Argument was heard by the court en banc and counsel for the parties have submitted briefs.

The testimony reveals that defendant admittedly signed three trade acceptances, each in the sum of $200, all dated July 25, 1955, all payable to the order of Sterling Materials Company, Inc., at The First Columbia National Bank at Columbia, and serially due on December 1, 1955, January 1, 1956, and February 1, 1956. These trade acceptances were delivered by defendant to Sterling Materials Company, Inc., in payment of certain roofing materials, which defendant later refused to accept. On August 10, 1955, in the regular course of its business, plaintiff purchased the three trade acceptances from Sterling Materials Company, Inc., for the sum of $420 and they were transferred to plaintiff by unrestricted indorsements. Notice of the purchase of the three trade acceptances by plaintiff from Sterling Materials Company, Inc., was given to defendant by plaintiff by letter dated August 10, 1955. Subsequently, the three trade acceptances were forwarded through regular channels to the paying bank on their respective due dates and payment was refused. Purchase of the trade acceptances was made by plaintiff without knowledge of any defense on the part of defendant and without knowledge that defendant had not received the materials purchased.

Defendant, an electrical contractor, agreed to purchase a quantity of roofing materials from a representative of Sterling Materials Company, Inc., and to pay therefor the sum of $600. Defendant was requested to

pay cash for the materials but he arranged to make three monthly payments of $200 each. The Sterling representative had defendant sign the three trade acceptances, telling him they were in the nature of a note and would be put through a bank. The record discloses that defendant had had no experience with trade acceptances and did not know what they were, but had experience in writing checks. No effort was made by defendant to obtain any advice before signing the trade acceptances and he knew when he signed them that he would have to pay them on their respective due dates. The day after signing the trade acceptances defendant went to his bank and asked the bank to check Dun & Bradstreet on the reputation of Sterling Materials Company, Inc. Following the receipt from the bank of the report, defendant canceled the order and refused to take delivery of the materials. No testimony was offered as to the method used to cancel the order or the time of the cancellation.

The question to be determined here is whether the court properly directed a verdict for plaintiff or should have permitted the jury to pass on whether defendant had a defense under § 3–305 (2) (c) of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §3–305. The record clearly discloses plaintiff to be a holder in due course of the three trade acceptances. They were purchased for value, before their due dates and in the regular course of business. The trade acceptances had not been dishonored and plaintiff had no notice of any defense on the part of anyone, including defendant. Under these circumstances, plaintiff meets the requirement of a holder in due course as defined by the code. As such a holder, plaintiff took the trade acceptances free from all defenses on the part of defendant, with whom plaintiff had no dealings, except those set forth in § 3–305 of the code. In the present case, the only possible defense available to defendant is set forth

in § 3–305 (2) (c). This section of the code reads, a holder in due course takes the instrument free from all defenses of any party to the instrument with whom the holder has not dealt except: "(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms". By directing a verdict for plaintiff, the court determined at the time of the trial that defendant had not produced testimony which justified submitting to the jury the question of whether defendant had brought himself within the exception to the general rule. After further deliberation and careful study of the record, we are convinced that defendant failed to show he was induced to sign the trade acceptances by misrepresentations, with neither knowledge nor reasonable opportunity to obtain knowledge of their character or essential terms and that the directed verdict was proper.

This particular part of the section of the code is new but follows the majority of the decisions which recognized the defense of fraud in the essence or fraud in the factum against a holder in due course. The circumstances of the present case do not bring it within the class of cases where the maker is tricked into signing. In Resh v. First National Bank of Allentown, 93 Pa. 397, defendant signed a note but was told he was signing a receipt and there the court held the instrument invalid even in the hands of a holder in due course. Here defendant signed the three trade acceptances after being told they were in the nature of a note and would be put through a bank. Defendant knew he was signing three obligations which he would be required to pay on their several due dates. The record is devoid of any testimony that any misrepresentations were made by the Sterling representative before or at the time defendant signed. Defendant

knew that he had agreed to purchase certain roofing materials and that he would have to pay for the materials at the rate of $200 per month for three months. He said he thought he was signing something in the nature of a check and he could hardly have been more correct.

However, paragraph (c) of subsection (2) of §3-305 of the code extends the defense to an instrument of which the signer had neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms. In other words, was defendant excusably ignorant of the contents of the writing he signed and had he no opportunity to obtain such knowledge. In our opinion the defendant was not ignorant of what he signed. He knew the three trade acceptances were obligations which required him to pay definite amounts of money on certain dates. He admitted being told the trade acceptances were like a note and would be put through a bank. He testified he thought he was signing something in the nature of a check, which he was accustomed to signing, and knew or must have known that a check is an order to pay money to some named person. It is true that he did not know the meaning of the word negotiable but he knew that checks which he issued might get into the hands of someone other than the payee. Defendant may have given no thought at the time of signing to the possibility of the instruments getting into the hands of someone other than Sterling Materials Company, Inc., but he knew he had promised to pay definite sums of money on definite dates. Defendant was not only aware of the character of the instruments signed but also understood the essential terms of the three trade acceptances.

Defendant made no effort to ascertain from any outside source the meaning or implications of the instruments he signed. The Sterling representative did not

refuse to permit defendant to make inquiries, since no such request was made and defendant apparently understood what he was doing and needed no help. It was defendant who suggested that payment for the materials be spread over a three months' period. Defendant also testified that he never saw the Sterling representative before and had no reason to place any confidence in anything he said. Defendant had been in business for almost 40 years and obviously considered himself capable of transacting business without the aid or assistance of any one else.

The facts of this case are even weaker than those in First National Bank v. Anderson, 7 D. & C. 2d 661, where the court refused to open a judgment entered on a warrant of attorney signed by three persons who had not read the contract and note and made no effort to seek advice before signing.

And now, August 23, 1957, for the reasons herein stated the motion for a new trial is dismissed.